[No. 30105. *En Banc.* April 16, 1948.]

G. P. HALFERTY & COMPANY, *Appellant,* v. KING COUNTY
*et al., Respondents.*[1]

[1]Reported in 192 P. (2d) 736.

*Jones & Bronson,* for appellant.

*Lloyd Shorett* and *Wm. R. Bell,* for respondents.

HILL, J.—The question here presented involves the construction of the last proviso of Rem. Rev. Stat., § 11130 [P. P.C. § 979-103], as amended by chapter 66, p. 187, Laws of 1939, which reads as follows:

" . . . *And provided further,* That goods, wares and merchandise manufactured or produced in any of the territories or possessions of the United States situated outside the boundaries thereof, and all raw furs produced ·outside the State of Washington and brought into the state for the sole purpose of transportation through and to points without the state, while being so transported, or while held in storage in a public or private warehouse awaiting such transportation, shall be considered and held to be property in transit and non-taxable if actually shipped to points outside the state on or before April 30th of the first year for which they would otherwise be taxable; and the county assessor shall list and assess all such goods, wares, and merchandise as of January 1st of each year, without regard to any average inventory, *but shall cancel any such assessment in whole or in proportionate part upon receipt of sufficient documentary proof that the identical property so assessed was actually shipped to points outside the state on or before April 30th of such year; but no such cancellation shall be made unless such proof be furnished to the county assessor before June 1st of such year.* A sale of or transfer of title to any such property, while being so transported or held in storage, shall not operate to defeat the intent or purpose of this proviso." (Italics ours.) (Rem. Rev. Stat. (Sup.), § 11130.)

Appellant brings this action to cancel assessments and the personal property taxes based thereon, and to restrain the collection of such taxes. The amended complaint alleges that the appellant was the owner of approximately thirty thousand cases of canned salmon and canned clams which were held in storage in a public or private warehouse in King county on January 1, 1944, and which had been manufactured or produced in territories or possessions of the

United States outside the boundaries of the state of Washington, and had been brought into this state within six months prior to that date for the sole purpose of transportation through, and to points outside of, the state of Washington; and that all except five hundred forty-five cases were actually shipped to points outside the state of Washington prior to April 30, 1944; that, through inadvertence and the mistake of appellant's employee, the documentary proof furnished the county assessor listed 11,316 cases as having been shipped to points within the state of Washington; that, in truth and fact, 10,773 of the 11,316 cases had been shipped to points outside the state of Washington before April 30, 1944. The mistake is thus explained:

"That through the inadvertence and mistake of plaintiff's [appellant's] employee who prepared said affidavit and proof, the proof submitted erroneously indicated that 11,316 cases of salmon and clams at the East Water Way and Salmon Terminal had been shipped to points within the State of Washington; that said mistake arose out of the following circumstances: the plaintiff itself sells a substantial portion of its canned goods directly to dealers throughout the United States; the remaining portion of its canned goods was at that time sold by a firm of brokers known as Pacific Packers Co. in Seattle, Washington, acting as sales and shipping agents; the sales made by and through Pacific Packers Co. were likewise sold to various dealers throughout the United States; as to sales made by Pacific Packers Co. the plaintiff made a memorandum billing to the latter named firm of brokers; the employee, who prepared the pencilled memorandum from which the affidavit filed on May 31, 1944, was copied, listed under the heading of Washington deliveries all cases of salmon and clams sold by and through Pacific Packers Co., who was acting solely as shipping and sales agent, notwithstanding the fact that the cases of salmon and clams included in the sales made by Pacific Packers Co. were also shipped out of the State of Washington prior to April 30, 1944; the mistake of listing, under the column Washington Deliveries in the affidavits and proof that were filed with the defendant [respondent] assessor, all shipments upon sales made by and through Pacific Packers Co. was the result of the employee's failure to understand or comprehend that such sales or deliveries should not be classified as Washington deliveries."

The amended complaint and bill of particulars further show that an amended and corrected proof was furnished the assessor on August 28, 1945, showing that these 10,773 cases had actually been shipped outside the state of Washington before April 30, 1944, but that the assessor refused to cancel the assessment on the 10,773 cases, and that a tax had been levied against them in the sum of $2,624.82, and that the county treasurer was threatening to enforce the payment thereof by distraint proceedings.

Appellant asked that the assessor and the treasurer of King county be required to correct their records to show that the 10,773 cases of canned salmon and clams were exempt, and to cancel the assessment thereof and the tax levied thereon, and that the collection of the tax be restrained.

A demurrer having been sustained to the amended complaint and appellant having failed to plead further, a judgment of dismissal was entered, from which this appeal is taken.

Appellant contends, first, that the timely filing of proof of shipment outside the state is not a necessary condition to the right of exemption under Rem. Rev. Stat., § 11130, as amended by chapter 66 of the Laws of 1939. With this contention we cannot agree. We have had occasion to construe a somewhat similar statute enacted by the same legislature, being chapter 67, p. 189, of the Laws of 1939. Section 2 of that chapter is as follows:

"All grains and flour, fruit and fruit products, vegetables and vegetable products, and fish and fish products, while being transported to or held in storage in a public or private warehouse shall be exempt from taxation if actually shipped to points outside the state on or before April 30th of the first year for which they would otherwise be taxable: *Provided, That proof of shipment be furnished as required in section 3 of this act.*" (Italics ours.) Rem. Rev. Stat. (Sup.), § 11130-5 [P.P.C. § 979-407].

Section 3, so far as material, is as follows:

"The county assessor shall list and assess all such grains and flour, fruit and fruit products, vegetables and vegetable products, and fish and fish products as of January 1st of

each year, without regard to any average inventory; *but shall cancel any such assessment in whole or in proportionate part upon receipt of sufficient documentary proof that the property so assessed was actually shipped to points outside the state on or before April 30th of such year: Provided, That no such cancellation shall be made unless such proof be furnished to the county assessor before June 1st of such year: . . .*" (Italics ours.) Rem. Rev. Stat. (Sup.), § 11130-6 [P.P.C. § 979-409].

And we also quote § 6 of that chapter:

"The purpose of this act is to encourage the storage of the commodities herein defined in the State of Washington and this act shall be liberally construed." Rem. Rev. Stat. (Sup.), § 11130-9 [P.P.C. § 979-415].

In *Libby, McNeill & Libby v. Ivarson,* 19 Wn. (2d) 723, 144 P. (2d) 258, this statute and the following portions of Rem. Rev. Stat. (Sup.), §§ 11112 and 11265 [P.P.C. §§ 979-59, -493], were construed together:

"§ 11112. . . . All personal property in this state subject to taxation shall be listed and assessed every year, with reference to its value and ownership on the first day of January of the year in which it is assessed: . . ."

"§ 11265. . . . The taxes assessed upon each item of personal property assessed shall be a lien upon such personal property from and after the date upon which the same is listed with and valued by the County Assessor . . .";

and this court there said:

"In construing and applying these statutes, chapter 67, and this constitutional provision [Art. XI, § 9], they must be read and considered together and with reference to the subjects and classes of property to which they relate. Sections 11112 and 11265 are general statutes dealing with and relating to personal property generally subject to taxation in the state. In the enactment of chapter 67, the legislature stated its purpose, as set forth in § 6 thereof. It was recognized that annually there were large quantities of commodities, enumerated therein, that were transported in interstate and foreign commerce; that it would be convenient or necessary to store them for a time in a warehouse; and that under existing statutes they might become subject to taxation. The problem of whether their interstate character was such that they could not be taxed without a viola-

tion of the Federal constitution, or whether they had come to rest within the state and no longer had an interstate status, would be ever present. The revenue to be derived from their storage in the state and the other benefits to be derived, no doubt prompted the legislature to hold out some inducement to the owners and shippers of such commodities to bring them to and through the state, and such inducement was exemption from taxation, provided they were again shipped out of the state when the purpose of their storage had been served. It seems quite plain, therefore, that the legislature, while following the pattern of §§ 11112 and 11265, intended to and did provide for a conditional personal liability for the taxes assessed and a conditional lien on the commodities enumerated, subject to be defeated by the performance of conditions subsequent: the shipment of the property out of the state on or before April 30th and the furnishing of documentary proof thereof by June 1st. In this way, the various statutes are harmonized and all can apply and operate in their respective spheres."

But appellant urges that there is a distinction between chapters 66 and 67 of the Laws of 1939, in that the word "provided" is not used in the last proviso of Rem. Rev. Stat., § 11130, as amended by chapter 66, and the cancellation of the assessment is not made to depend upon a condition subsequent, *i.e.,* shipment outside the state on or before April 30th and the timely filing of proof thereof. To follow this contention, the italicized portion of chapter 66 on p. 1 of this opinion and the italicized portion of chapter 67 on p. 4 of this opinion should be compared.

It is further urged that chapter 67 is an exemption statute, while chapter 66 confers a status upon the property which renders it exempt, *i.e.,* it

" . . . shall be considered and held to be property in transit and non-taxable if actually shipped to points outside the state on or before April 30th of the first year for which they [the properties] would otherwise be taxable; . . ."

■  We are convinced that these two enactments disclose the common purpose of encouraging the storage of commodities in the state of Washington, whether they be salmon from Alaska, sugar from Hawaii, or any other goods, wares, or merchandise manufactured or produced in any of the

territories and possessions outside the boundaries of the United States which would already have entered into the stream of interstate commerce before arrival in this state; or whether they be certain products of this state which are destined shortly to enter into that stream. The legislature was clearly trying to work out identical procedures; and although in the amendment to Rem. Rev. Stat., § 11130, by chapter 66 of the Laws of 1939, the word "provided" is not used as it is in chapter 67, the legislature intended (and the language used in chapter 66 expresses that purpose) that the assessments provided for should be valid, subject to cancellation if the goods, wares, and merchandise referred to therein were shipped out of the state by April 30th and documentary proof thereof was furnished before June 1st.

With reference to the argument that the canned salmon and clams, having been shipped outside the state prior to April 30th, had achieved the status of property in transit and were nontaxable in any event, and, hence, the filing of the proof of such shipment was not a necessary condition to the right of exemption, our comment is that it is akin to the phenomenon of raising one's self by one's own bootstraps. If the canned salmon and clams of appellant were in fact property in transit and a part of the stream of interstate commerce on January 1, 1944, they were nontaxable in any event and legislation by this state was not required to make them so, and, of course, the filing of any proof of shipment was superfluous. *Brown v. Maryland,* 25 U. S. 419, 6 L. Ed. 678; *Washington Chocolate Co. v. King County,* 21 Wn. (2d) 630, 152 P. (2d) 981. But if appellant's canned salmon and clams were "at rest" for such a period and under such conditions as to make their status as "in transit" very dubious when measured by judicial standards, and appellant desired to avail itself of the legislative enactment under which they might be "considered and held to be property in transit and non-taxable," it cannot avail itself of that enactment to achieve the status and then say that, because that status has been achieved, the other requirements of the statute are inapplicable.

■ We are of the opinion that timely filing of proof of shipment outside the state is a necessary condition to the cancellation of an assessment on goods, wares, or merchandise "considered and held to be property in transit and nontaxable" under Rem. Rev. Stat., § 11130, as amended by chapter 66 of the Laws of 1939.

We have disposed of appellant's argument regarding the distinction between Rem. Rev. Stat., § 11130, as amended by chapter 66 of the Laws of 1939, and chapter 67 of the Laws of 1939, because of appellant's insistence that it is claiming exemption under the former. We are of the opinion that the pleadings clearly disclose that its claim of exemption was made under chapter 67. The "documentary proof" filed on May 31, 1944, and the corrected documentary proof filed on August 28, 1945, both have the caption, "Affidavit in Support of Tax Exemption Claimed on Products in Storage as Provided in Chapter 67, Laws of Washington, 1939." The wording of the affidavits shows an attempt to claim exemption under that act. The original affidavits, filed on May 31, 1944, state specifically that

". . . this affiant makes this affidavit in compliance with the provisions of Chapter 67, Laws of Washington, 1939: . . . as documentary proof in support of the exemption provided in said statute; and for the purpose of aiding the Assessor and Board of Equalization of King County, Washington, in determining the assessable value of said property for the year 19......."

The corrected documentary proof, filed August 28, 1945, states that

". . . this affiant makes this affidavit in compliance with the provisions of Chapter 67, Laws of Washington, 1939: This affidavit is submitted by way of amendment and correction to an affidavit signed by Norman F. Denton and filed with the Office of King County Assessor on May 31, 1944 . . . as documentary proof in support of the exemption provided in said statute; and for the purpose of aiding the Assessor and Board of Equalization of King County, Washington, in determining the assessable value of said property for the year 1944."

Nowhere in these affidavits or documentary proof is there any declaration that the canned salmon and canned clams in question were manufactured or produced in any of the territories or possessions of the United States situated outside the boundaries thereof, or that they had been brought into the state of Washington for the sole purpose of transportation through and to points without the state, both of which would have been prerequisites in any claim of exemption under Rem. Rev. Stat., § 11130, as amended by chapter 66 of the Laws of 1939. The intention to claim exemption under that section must have been formed subsequent to August 28, 1945, and, so far as the record before us shows, no documentary proof has yet been filed which would bring the 10,773 cases of canned salmon and clams within the purview of that statute, unless the complaint and amended complaint could be regarded as such documentary proof.

We come now to appellant's second contention, that, even if the statute requires the timely filing of proof of shipment outside the state, a court of equity may relieve against the mistake made in the proof that was filed. We start with the thesis that the cases of canned salmon and canned clams involved in this proceeding were personal property in this state, subject to taxation on January 1, 1944; for if they had been actually in transit as a part of the stream of interstate commerce on that date, no state statute would have been necessary to give them exemption. Appellant does not rely upon their status as being in interstate commerce, but upon a state statute which provides that the valid assessment made on January 1st will be canceled if the goods, wares, and merchandise in question are shipped out of the state by April 30th. The statute further provides that there shall be no cancellation of the assessment unless documentary proof of such shipment is furnished before June 1st.

■■ If a taxpayer desires to have a valid assessment canceled, he must comply with the statute which gives him that privilege. Mistake or no mistake, the fact is that it was not until August 28, 1945—fifteen months after the time limit set by statute for the filing of proof, and three

months after the tax had become delinquent—that the county assessor received documentary proof that the 10,773 cases of canned salmon and canned clams involved in this proceeding had been shipped out of the state of Washington by April 30, 1944. The legislature had a reason for providing that documentary proof of such shipment should be furnished to the county assessor before June 1st of the year in which the assessment is made, and a survey of our taxation statutes makes that reason apparent.

Before June 1st, to wit, by May 31st, the assessor is required to complete the duties of listing and placing valuations on all property, in the following manner:    ·

"  .   .   . He shall make an alphabetical list of the names of all persons in his county liable to assessment of personal property, and require each person to make a correct list and statement of such property according to the prescribed form, which statement and list shall be subscribed and sworn to by the person listing the property, and the Assessor shall thereupon determine the value of the property included in such statement and enter fifty per cent (50%) of the same in the assessment books opposite the name of the party assessed;  .   .   ." Rem. Rev. Stat. (Sup.), § 11140 [P.P.C. § 979-159].

By the first Monday in July, he is required to file the assessment list with the clerk of the county board of equalization (Rem. Rev. Stat. (Sup.), § 11148 [P.P.C. § 979-397]), which board continues in session for two weeks (Rem. Rev. Stat. (Sup.), § 11220 [P.P.C. § 979-399]). The state board of equalization meets in August (Rem. Rev. Stat. (Sup.), § 11222 [P.P.C. § 979-401]).

After the levies have been made by the various taxing bodies, they are certified to the county assessor on or before the second Monday in October. He then extends the taxes upon the tax rolls, delivering them to the county auditor on or before the fifteenth day of December (Rem. Rev. Stat., § 11240 [P.P.C. § 976-521]).

On the first Monday in January following, the county auditor delivers the tax rolls to the county treasurer, whose duty it is to collect the taxes therein levied (Rem. Rev. Stat. (Sup.), § 11243 [P.P.C. § 979-525]). On Februa-

ary 15th, the county treasurer proceeds to collect all personal property taxes (Rem. Rev. Stat. (Sup.), § 11247 [P.P.C. § 979-219]); and the tax on personal property becomes delinquent if one half thereof is not paid by May 31st (Rem. Rev. Stat. (Sup.), § 11244 [P.P.C. § 979-495]).

It will be observed that the cases of canned salmon and canned clams involved in this proceeding had been assessed, the tax had been levied thereon, and the tax had been delinquent for approximately three months before any documentary proof was furnished that the 10,773 cases in question had been shipped out of the state prior to April 30, 1944.

To gear the cancellation of assessments under either Rem. Rev. Stat., § 11130, as amended by chapter 66 of the Laws of 1939, or chapter 67 of the Laws of 1939, in with the established taxing machinery, these statutes require those who claim a special status or exemption for property otherwise taxable to establish their right to have the assessments thereon canceled by May 31st, the date on which the assessor is required to complete the duty of listing and placing valuations on all property. The appellant having failed to establish that special status or exemption for the 10,773 cases of canned salmon and canned clams in question by that date, the assessment should not be canceled, and the tax should be paid.

In passing, we call attention to the fact that there is no allegation in the amended complaint excusing the delay from May 31, 1944, to August 28, 1945, some fifteen months, in discovering and reporting the claimed mistake, and, in fact, there is no allegation as to when the mistake was discovered. However, we make no issue of these matters, because it is our position that, to secure a cancellation of the assessment under either statute herein referred to, documentary proof must be furnished before June 1st of the year in which the assessment is made, that the property on which it is desired to have the assessment canceled was shipped out of the state on or before April 30th of that year.

The Washington case relied on by appellant, *Turner v. Spokane County,* 150 Wash. 524, 273 Pac. 959, is entirely

inapplicable. It was there decided that opera chairs manufactured especially for the particular building, and bolted or screwed to the floor, were realty and not personalty. They had been listed as personalty by the assessor, and Turner had signed the listing. Turner brought an action to enjoin the collection of the personal property tax levied on the chairs. This court, in disposing of the contention that his signing of the assessment sheet operated as an estoppel, said:

"In the present case, *the facts with reference to the opera chairs were as well known to the assessing officer as they were to the appellant.* There was no misleading or overreaching. The fact that the appellant signed the listing for the year 1925, after having expressed a doubt as to whether the property in question could be assessed as personal property, does not work an estoppel against the right to now question the legality of the tax." (Italics ours.)

The other cases relied on by appellant are equally inappropriate. The tax was in each instance on sales or property which had a nontaxable status, or on property which was not within the jurisdiction of the taxing authority, or on property which the taxpayer did not own and for the tax on which he was not liable. Appellant overlooks the distinction between granting relief from the listing of property which is not taxable because of constitutional or statutory provisions, or which is not owned by the taxpayer, or which is not within the jurisdiction of the taxing authority, and a situation such as the present, where relief is requested although the property was owned by the person listing it, was within the jurisdiction of the taxing authority, and was subject to assessment, and to taxation unless that assessment was canceled.

The demurrer to the amended complaint was properly sustained, and the order of dismissal based thereon is affirmed.

MALLERY, C. J., BEALS, JEFFERS, and SCHWELLENBACH, JJ., concur.

ROBINSON, J. (concurring in part and dissenting in part) —I concur with the majority's conclusion that timely filing

of proof of shipment outside the state is a necessary condition to the right of exemption under Rem. Rev. Stat., § 11130 [P.P.C. § 979-103], as amended by chapter 66, p. 187, of the Laws of 1939; but I do not agree with the majority's conclusion that a court of equity may not relieve against the consequences of a mistake in the proof filed by a taxpayer unless such mistake is corrected prior to the time provided in the statute.

In 51 Am. Jur. 629, § 667, the rule is stated to be that a mistake in a tax return does not preclude a taxpayer from showing the actual facts and from having his tax liability determined by correct principles of law applicable to such facts, where he acted in good faith and did not intend to mislead the taxing authorities. Cited in support of that rule is *Commissioner of Corporations and Taxation v. Ford Motor Co.,* 308 Mass. 558, 33 N. E. (2d) 318, 139 A. L. R. 936, in which case the return made by the taxpayer showed receipts of $32,967,492.26, subject to excise taxes of the state of Massachusetts, and excise taxes were paid on that amount. This was the total amount of sales in the state and included sales in interstate commerce which were not subject to the excise tax. The Ford Motor Company sought a rebate of so much of the tax as had been paid on sales in interstate commerce:

"The taxpayer filed a return from which it appeared that the gross receipts assignable to Massachusetts amounted to $32,967,492.26. The amount stated represented the total sales made by the Somerville branch. There is no contention that the company was not acting in good faith or that it intended to mislead the commissioner. Such a mistake does not preclude the taxpayer from showing the actual facts and from having its tax liability determined by correct principles of law applicable to these facts. *Dunnell Manuf. Co. v. Pawtucket,* 7 Gray, 277. *Charlestown v. County Commissioners of Middlesex,* 109 Mass. 270. *Milford Water Co. v. Hopkinton,* 192 Mass. 491. *Sears v. Nahant,* 221 Mass. 437. *Hamilton Manuf. Co. v. Lowell,* 274 Mass. 477."

Judge Thomas M. Cooley says:

"Ordinarily, a property owner is bound by a schedule of his taxable property given by him to the assessor; but

handing in a list which, by mistake of the owner's rights, is made to embrace property not liable to taxation, will not estop him from claiming an abatement as to such exempt property; there being no reason of justice or public policy why it should." 3 Cooley, Taxation (4th ed.) 2195, § 1086.

In *Charlestown v. County Commissioners of Middlesex,* 109 Mass. 270, the facts were that Daniel Chamberlain, a resident of Boston, operated a hotel in Charlestown; the furniture in the hotel was taxable in the town of his residence, but he had filed a return showing it to be taxable in Charlestown. The county commissioners had abated the tax as the result of a complaint by Chamberlain, and the city of Charlestown was attempting to quash the proceeding, claiming that the tax could not be abated because Chamberlain included the furniture in his sworn list, as property liable to taxation. Answering this contention, the court said:

"We can see no reasons, of justice or public policy, why, if he by a mistake of his rights returns to the assessors as liable to taxation property which is by law exempt, he should be thereby estopped to claim a reasonable abatement, and compelled to pay more than his just proportion of the taxes. This question was substantially decided in *Dunnell Manufacturing Co. v. Pawtucket,* 7 Gray, 277."

Another well-reasoned case is *Chicago, B. & Q. R. Co. v. Cass County,* 51 Neb. 369, 70 N. W. 955. The facts are set forth in the portion of the opinion here quoted:

"In the case at bar the evidence shows that the tax agent of the railroad company listed the west half of this bridge for taxation in said school district No. 2 because he erroneously believed that said half of the bridge was in the boundary limits of said school district. His mistake was a mistake of fact. It is neither pleaded nor proved by the defendants in error that any of them believed that the bridge was in fact within the limits of school district No. 2; nor that they believed the statement of the tax agent, if he made one, that it was within the limits of said district; nor that they changed their status in any respect by reason of the tax agent so listing the property. All that appears is that the tax agent so listed the property as being in school district No. 2; that he did this because of a mistake of fact as to the actual location of the bridge and that the mistake

was innocently made; but it does not appear that the school district was in any manner prejudiced by such listing or representation of the railroad company's tax agent, and we conclude, therefore, that the conduct of the railroad company in listing its property as being in school district No. 2 in the year 1895, and prior years, does not estop it from maintaining this action; and if the court based its decree upon a finding of law made by it, that the company was estopped by reason of its conduct in the premises, the decree is contrary to law."

I am of the opinion that the appellant, by its amended complaint, has set forth such a mistake as may entitle it to equitable relief. It is the public policy of the state, clearly expressed, that goods, wares, and merchandise, under the circumstances here existing, should not be taxed if shipped out of the state by April 30th. If the mistake in the return was not due to willful neglect (which is negatived by the allegations of the complaint) and the granting of the relief sought will not cause the other parties interested any serious loss (apart from the loss of the tax) or inconvenience, the relief should be granted. Any serious loss or inconvenience that might constitute a countervailing equity would be in the nature of an affirmative defense.

The judgment of dismissal should be reversed, with instruction to the trial court to overrule the demurrer.

STEINERT, MILLARD, and SIMPSON, JJ., concur with ROBINSON, J.

---

May 27, 1948. Petition for rehearing denied.