[No. 320-1.   Division One—Panel 2.   July 12, 1971.]

SEARS, ROEBUCK AND CO., *Respondent*, v. KING COUNTY, *Appellant*.

*Christopher T. Bayley, Prosecuting Attorney, James E. Kennedy* and *William L. Paul, Jr., Deputies, Elmer E. Johnston* and *William R. Creech,* for appellant.

*Bogle, Gates, Dobrin, Wakefield & Long, Max Kaminoff, Paul W. Steere,* and *Vincent W. Jones,* for respondent.

SWANSON, J.—At 12 noon on January 1st of every year, all personal property in the state of Washington is subject to assessment and taxation, excepting such as is exempted

from taxation by law.[1] RCW 84.36.171, *et seq.*[2] (repealed by Laws of 1969, Ex. Ses., ch. 124, § 6, p. 944), the statutes

[1] RCW 84.36.005.

[2] "Goods, wares, raw furs and merchandise manufactured or produced in any of the states, territories, or possessions of the United States or foreign countries and brought into this state for the purpose of transportation or sale through and to points without the state, and identified at the time the affidavit is filed as property ultimately destined for out-of-state shipment, while being so transported, or while held in storage in a public or private warehouse awaiting such transportation, shall be considered and held to be property in transit and nontaxable if actually shipped to points outside the state. The county assessor shall list and assess all such goods, wares and merchandise as of January 1st of each year, without regard to any average inventory, but shall cancel any such assessment in whole or in proportionate part upon receipt of the affidavit of exemption as set forth in section 14 of this amendatory act. A sale of or transfer of title to any such property, while being so transported or held in storage, shall not operate to defeat the intent or purpose of this section." Laws of 1963, Ex. Ses., ch. 28, § 13, p. 1488.

"Any owner or agent claiming property in transit as defined in RCW 84.36.171 as of January 1st of any year shall file with his listing of property as provided by RCW 84.40.040 an affidavit of exemption in such form and manner as prescribed by the state tax commission which shall adequately describe the nature and amount of such property. Such property for which an exemption is sought must be shipped to an out-of-state destination not later than December 31st of the year for which the exemption is claimed." Laws of 1963, Ex. Ses., ch. 28, § 14, p. 1489.

"If any property claimed to be tax exempt as property in transit as defined in RCW 84.36.171 is reconsigned to a final destination in the state of Washington or is not shipped out of the state by December 31st the owner or agent shall file a report not later than March 31st of the following year with the county assessor of the county in which the goods were located. Such report shall be on a form prescribed by the state tax commission. For each year the property would have been taxed, except for the provisions of this amendatory act, all such properties so reconsigned or not shipped out of the state by December 31st shall be assessed and taxed as otherwise provided by law, including (but not limited to) assessments as omitted property pursuant to RCW 84.40.080: *Provided,* That the three year limitations granted other omitted property shall not apply to property in transit reconsigned for delivery in the state of Washington. Such property shall be subject to taxation for any year during which they were held as exempt property within the state prior to their delivery to some point in the state: *Provided further,* That any property first declared to be exempt as in transit and later reconsigned for delivery within the state shall be subject to a penalty equal to eight percent of the tax found to be

applicable in 1966, the tax year in question, exempted from taxation in-transit property defined in RCW 84.36.171 as property in the January 1st inventory that was obtained out of state and would be shipped out of state by December 31st (prior to the 1963 amendment, the statute set the date of April 30th), of the same year.

The statutory procedure for claiming the exemption required that the owner of in-transit property file with the January 1st written inventory an affidavit of exemption adequately describing the nature and quantity of such property. The county assessor, upon receipt of the affidavit, was required to cancel that part of the assessment charged against in-transit property.

In 1966 Sears, Roebuck and Co. ("Sears") filed an affidavit to except that portion of its January 1, 1966, inventory located in King County that was obtained out of state and destined for out-of-state shipment during 1966. That exemption was subsequently disallowed in 1968 by the King County assessor on the basis of the county's "current review of records used and methods employed [by Sears] to

---

payable on such property during the period it was declared as exempt." Laws of 1963, Ex. Ses., ch. 28, § 15, p. 1489.

"All property claimed to be property in transit under section 1 of this amendatory act shall be so designated upon the books and records of the owner or his agent, or if the owner or agent maintains no records within this state, then upon the records of the warehouse or other person or agency having custody of such property in this state. An owner or agent filing an affidavit of exemption under this amendatory act shall consent to the inspection of his books and records upon which the claimed property has been designated, such inspection to be similar in manner to that provided by RCW 84.40.340, or if the owner or agent does not maintain records within this state, the consent shall apply to the records of the warehouse, person or agent having custody of the property in this state. Consent to the inspection of the records shall be executed as a part of the affidavit of exemption. The owner, his agent, warehouseman or other person having custody of the property referred to herein shall retain within this state for a period of at least two years from the date of the affidavit of exemption a copy of the records showing shipment of such property to a destination outside this state. If adequate records are not made available to the assessor within the county wherein the exemption is sought then the exemption shall be denied." Laws of 1963, Ex. Ses., ch. 28, § 16, p. 1490.

arrive at your [Sears'] claim." Sears paid the $173,579.72 assessment under protest and filed an action to obtain a refund. The trial court found that the plaintiff taxpayer had complied with the identification requirements of RCW 84.36.171 which it construed to mean identification by any reasonable and reliable method, rather than by a strict tracing method. King County appeals.

The sole issue presented by this case is whether or not the taxpayer Sears complied with the requirement of RCW 84.36.171 that in-transit goods be "identified at the time the affidavit is filed as property ultimately destined for out-of-state shipment, . . ." and the requirement of RCW 84.36.172 that the affidavit of exemption "shall adequately describe the nature and amount of such property."

In determining the amount of property in transit in its January 1, 1966, inventory, Sears used what is termed the percentage method.[3] Finding 5 described how Sears calculated its 1966 freeport exemption.

### Sears' Method of Calculating the "Freeport Exemption"

In calculating the amount of freeport goods in its Seattle Catalog Order Plant inventory for the year 1966, Sears used the "percentage method" of calculation. The calculations are reflected on a worksheet which is attached as Exhibit 10 to the Stipulation of Facts, and they involved the following steps: First, the total inventory of goods on hand in the Seattle catalog order plant on January 1, 1966, the assessment date, was ascertained on the basis of an actual count made as of January 31, 1966, the end of the Sears fiscal year, adjusted back to the assessment date by subtracting inventory purchases and adding sales out of inventory since January 1. Second, the amount of this inventory which originated outside the State of Washington was determined by calculating and then applying the ratio of out-of-state purchases for the inventory during the last three months of 1965 to the total purchases during those three months, as derived

[3]In 1969 the Washington State Legislature set forth the percentage method of computing the freeport exemption in RCW 84.36.300.

from Sears' purchase records. (In view of the annual turnover rate of 4.69—see paragraph XIII-B below—the merchandise on hand on January 1, 1966, had been purchased within that three-month period.) This determination showed that over 98% of the January 1, 1966, inventory was of out-of-state origin. Third, to make the projection required by said freeport goods exemption statutes, the portion of the inventory originating outside the State of Washington and intended for sale outside the state was determined by calculating, and then applying, the ratio of out-of-state shipments from that inventory during the preceding year to the total shipments and deliveries from that inventory, as derived from Sears' sales records. Using this method, Sears identified by dollar amount, and by merchandise categories, the portion of its January 1, 1966 catalog order plant inventory entitled to exemption under RCW 84.36.171, and this data was incorporated in the appropriate tax exemption claim form and was timely filed with the King County Assessor.

The appellant King County insists that the method used by Sears does not satisfy the requirement that in-transit property be identified as to nature and amount. The county argues that the statute permits only item-by-item listing of in-transit property. If the property so designated is not shipped out of state by December 31st, the taxpayer must submit an amended report and pay interest of 8 per cent on the additional tax assessed. Sears, however, suggests, and the trial court agreed, that the taxpayer need only determine, by any reliable method, the dollar amount of property to be classified in transit. The difference between the two views is that the county contends the taxpayer must specifically identify in-transit property, item by item, whereas Sears contends it need only calculate the dollar amount of property declared to be in transit.

Our major goal is to ascertain and give effect to the legislature's intentions. *Krystad v. Lau*, 65 Wn.2d 827, 844, 400 P.2d 72 (1965); *Lynch v. Department of Labor & Indus.*, 19 Wn.2d 802, 145 P.2d 265 (1944). The Supreme Court, in construing RCW 84.36.171 prior to amendment in 1963, held that its primary purpose was to encourage stor-

ing such property in the state. *Halferty & Co. v. King County*, 30 Wn.2d 561, 192 P.2d 736 (1948). Warehousing would be encouraged because the ever present problem of determining whether property was in interstate commerce, or in intrastate commerce and subject to local taxation,[4] could be resolved by the taxpayer simply shipping the property out of state before the statutory deadline. Thus, the tax free status of interstate commerce was granted to the properties referred to in RCW 84.36.140 and RCW 84.36.171, because the benefits gained would outweigh the tax loss.

> The revenue to be derived from their storage in the state and the other benefits to be derived, no doubt prompted the legislature to hold out some inducement to the owners and shippers of such commodities to bring them to and through the state, and such inducement was exemption from taxation, provided they were again shipped out of the state when the purpose of their storage had been served.

*Halferty & Co.*, 30 Wn.2d at 566. In 1963 the legislature amended the procedure for claiming the freeport exemption under RCW 84.36.171 so that the property did not have to be shipped out of state until December 31st rather than April 30th. This extension of shipment deadline evidences a further intention by the legislature to encourage warehousing in this state, because more property that might otherwise acquire a tax situs here could be deemed to be in interstate commerce and claimed exempt under the statute. The strict tracing requirement as advanced by the county, however, would make it impractical for merchants dealing in larger volumes of interstate commerce to file for the statutory exemption. Thus, the purpose of the exemption would not be achieved. On the other hand, if the identifica-

---

[4]The imposition of taxes on interstate commerce violates the commerce clause of U.S. Const. art. 1, § 8. But "by reason of a break in the transit, the property may come to rest within a State and become subject to the power of the State to impose a non-discriminatory property tax." *Minnesota v. Blasius,* 290 U.S. 1, 9, 78 L. Ed. 131, 54 S. Ct. 34 (1933).

tion regulations allow merchants to determine by any reasonable and reliable method the amount of in-transit property, merchants both large and small might benefit by the exemption.

██ In comparing the 1961 and 1963 exemption procedures it is evident that the 1963 procedure did not require strict item-by-item identification. In determining the legislature's intent,

> [r]esort to repealed and superseded statutes, *in pari materia,* may be had, and is of great importance, in the construction of statutes which reenact, with certain changes, or repeal former statutes, or which contain revisions or codification of earlier laws. [Citations omitted.]

*In re Estate of Phillips,* 193 Wash. 194, 201, 74 P.2d 1015 (1938). In 1961, the Washington State Legislature added a new section to RCW 84.36 in which the 1939 exemption of in-transit property from the personal property tax was reenacted.[5] Property obtained out of state and included in the January 1st inventory, but in the state only for warehousing before out-of-state shipment, was to be listed as taxable personal property. The assessor was required to cancel the assessment in whole or in part if he received "sufficient documentary proof that the identical property so assessed was actually shipped to points outside the state on or before April 30th of such year; . . ." No such cancellation was to be allowed unless the assessor received such proof prior to June 1st of such year. Thus, the taxpayer could wait until after April 30th, but before June 1st, of each year to determine which property included in the January 1st inventory was actually shipped out of state prior to April 30th. The taxpayer could always receive his maximum exemption even though he had to list identical property, because his application for exemption was not required until the last shipment date allowable, April 30th.

In 1963, the above procedure for claiming in-transit property exemption was amended. The time for shipment out of state was extended to December 31st, and instead of being

---

[5]Laws of 1961. ch. 168, § 3, p. 1778.

allowed to file for an exemption after the last possible shipment date, December 31st, the taxpayer had to identify as of January 1st which property in his inventory he expected to ship out of state by December 31st, of the same year.[6] Then, if the property was not shipped out of state by December 31st, the taxpayer was required to file a report by March 31st of the following year listing property omitted from the original assessment upon which a tax would be levied, plus an interest penalty of 8 per cent. After 1963, the taxpayer was required to estimate in January what portion of his in-transit property would be shipped out of state during the following year. Because he could no longer use hindsight to itemize the specific property inventoried January 1st that was actually shipped out of state, the taxpayer, if required to identify in January specific property in his January 1st inventory to be shipped out by December 31st, could rarely achieve the maximum exemption which was possible under the 1961 procedure.[7] Thus, warehousing in Washington would be discouraged, contrary to the purpose of the exemption. The statutory change from strict identification after shipment to estimation before shipment leads us to conclude that the estimation required of a taxpayer should allow him to claim the maximum exemption without the threat of an 8 per cent interest penalty, as he had been allowed to do prior to 1963. In order to enable a taxpayer to claim the largest exemption possible before shipment, only an estimation as to the amount of in-transit property can be required. Thus, as long as the property is described as to its general characteristics and the amount is calculated by a reasonable and reliable method, the assessor can verify the actual shipment

---

[6]Laws of 1963, Ex. Ses., ch. 28, § 13, p. 1488.

[7]The freeport exemption could be maximized under the 1963 procedure by claiming *all* of one's January 1st inventory and then filing an amending report after December 31st for those specific properties that were not shipped out of state by December 31st. A penalty of 8 per cent interest, however, would have to be paid on the amount of the resulting tax on property not shipped.

of such amount of in-transit property, and the identification requirements of the statutes are substantially complied with.

The county, however, argues that the percentage method used by Sears to calculate its exemption was adopted by the legislature in 1969; therefore, such method was not available for Sears to use in 1966. Usually a material change in a statute, such as the complete repeal in 1969 of the 1963 procedure, carries with it the presumption that the legislative purpose has changed. But, with the adoption of the percentage method as the only method of calculating the exemption, the legislature indicated even more positively that the purpose of the freeport exemption was to encourage warehousing in this state and that the taxpayer should be allowed the maximum exemption possible. The Attorney General, in February of 1968, rendered his opinion declaring that the percentage method was *not* allowable under the 1963 freeport exemption statute.[8] At the next session of the legislature the percentage method was outlined in the statute as the only method of calculating the exemption, leaving no question as to the percentage method's acceptability. Consequently, there should be no presumption of change.

Not only is this presumption of change used in construing the provisions of the amendatory act, but it is frequently resorted to in litigation arising after the amendment to determine rights accrued under the original act. Thus, it is presumed that the provisions added by amendment were not included in the original act. But the time and circumstances surrounding the enactment of the amendment may indicate that the change wrought by the amendment was formal only—that the legislature intended merely to interpret the original act. *If such is the case, the matter in the amendatory act may be looked to in order to determine what rights existed under the original act.*

---

[8]Sears and other taxpayers had used the percentage method for calculating their exemptions since 1963 without question by the county assessor. In 1967, the assessor retroactively disallowed the Sears' 1966 exemption claim.

(Footnotes omitted. Italics ours.) 1 J. Sutherland, Statutory Construction § 1930 (F. Horack ed. 1943).

The county denied Sears' exemption claim in total. The 1963 statute provided for such a denial only if the taxpayer did not maintain adequate records within the county wherein the exemption is sought. The county argues that because Sears did not identify specific property in its January 1966 inventory, it could not check Sears' records to determine whether such property was, in fact, obtained out of state and shipped out of state by December 31st. However, we hold that the identification requirement does not demand segregating or marking each item or container involved in order to determine what amount of the January 1st inventory is exempt. Thus, it is the dollar amount of property claimed to be in transit that the books must accurately reflect. The trial court found as a fact, and it is not contested here, that "[t]he records and accounts used by Sears in identifying its freeport merchandise are reliable business records, kept by Sears in the ordinary course of business." The accuracy of the amount of property claimed exempt by Sears could have been determined from Sears' records. The county, however, does not contest the accuracy of the amount. Therefore, Sears' claim should not have been disallowed, and the trial court correctly concluded "[t]he Sears method of calculation of its freeport exemption resulted in an accurate and reliable identification of the freeport merchandise within the intent of RCW 84.36.171."

Judgment affirmed.

FARRIS, A.C.J., and JAMES, J., concur.